UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THE LOCAL GOVERNMENT PROPERTY
INSURANCE FUND,

        Plaintiff,

  v.                                             Case No. 07-C-291

SPIRTAS WRECKING COMPANY,

        Defendant.

---

**DECISION AND ORDER**

---

Plaintiff (the "Fund") is an insurer of Wisconsin municipalities, including the City of Green Bay (the "City"). It brought this subrogation action against Defendant Spirtas Wrecking Company to recover $200,000 it had paid the City for damage Spirtas caused to Lambeau Field during a renovation project. The case was commenced in the Circuit Court for Brown County, but Spirtas removed the case to this Court pursuant to 28 U.S.C. § 1441, alleging jurisdiction under 28 U.S.C. § 1332. The case is now before the Court on Spirtas' motion for summary judgment. Spirtas seeks summary judgment on the ground that the City waived its own recovery rights against Spirtas and thus the Fund, the City's insurer, has no subrogation rights to recover its payment. For the reasons given herein, Spirtas' motion will be denied.

**I. Background**

On January 1, 2001, the Green Bay Packers entered into an agreement (the "Lease") to lease Lambeau Field from the City and the Green Bay-Brown County Professional Football Stadium

District (the "District"). (Wied Aff., Ex. A.) The District also entered into a Construction Administration Agreement ("CAA") with Lambeau Field Redevelopment, LLC, the developer of the renovation project. Lambeau Field Redevelopment, LLC later entered into a Construction Services Agreement ("CSA") with Turner Construction, the general contractor of the project. Turner then contracted with Missouri-based Spirtas Wrecking Co. for certain demolition services. Soon after beginning work, Spirtas caused damage to the stadium, one result of which was that the Fund reimbursed another insurance company $200,000 as part of a settlement.[1]

**II. Analysis**

The Lease is the principal agreement at issue in this case. Spirtas argues that a waiver clause contained within the release applies to all claims against all parties, including Spirtas, even though it was not a party to that agreement. Because the City waived any and all claims it has for damages, Spirtas argues that the City's insurer has no right of subrogation:

> It is a well-settled principle that Continental Casualty could pursue a subrogation claim against the Homontowskis only if CFM has the right to recover against them. CFM waived its rights to recover against the Homontowskis prior to the loss. Because the insurance contract did not prohibit that waiver, Continental Casualty has no right to pursue the Homontowskis.

*Continental Cas. Co. v. Homontowski,* 181 Wis.2d 129, 135, 510 N.W.2d 743, 746 (Wis. Ct. App. 1993).[2]

---

[1] The details of the various insurance arrangements are not addressed in the briefs in great detail. The circumstances of the payment arrangements are not material to the motion for summary judgment, however.

[2] The policy issued by the Fund reflected this in its own language: "the Fund will not acquire any rights of recovery which you have waiver, in writing, prior to the loss . . ." (Kostecke Aff., Ex. C, Section IX, ¶ K.)

2

Spirtas' argument that the City waived its right to recover is based on Section 16.1 of the Lease, which is entitled "Waivers of Certain Claims:"

> To the extent not expressly prohibited by law, the Team, the City, and the District each hereby releases the other, and their respective agents, servants and employees, from and each hereby waives all claims for damages to person or property sustained by the Team, the City, or the District, resulting directly or indirectly from fire or other casualty, cause or any existing or future condition, defect, matter or thing in or about the Lambeau Field Complex, or from any equipment or appurtenance therein, or from any accident in or about the Lambeau Field Complex, or from any act or neglect of any other person, including the Team's, the City's, or the District's agents and servants. This Section 16.1 shall apply especially, but not exclusively, to damage caused by fire, casualty or any other causes, and shall apply without distinction as to the Person whose act or neglect was responsible for the damage and whether the damage was due to any of the acts specifically enumerated above or from any other thing or circumstance, whether of a like nature or of a wholly different nature.

(Wied Aff., Ex. A at 53) (emphasis added).

The portions underlined above summarize Spirtas' position in a nutshell: "the City . . . hereby waives all claims for damages to person or property sustained by . . . the City." Because the City has waived "all claims," Spirtas argues the City cannot not pursue reimbursement from Spirtas, which means the City's insurer cannot do so either.

The Fund reads the clause above far differently. It notes, first, that the title of the section is "Waiver of Certain Claims" – not "Waiver of *All* Claims." More substantively, the Fund suggests that the entire clause only makes sense if it is read as applying only to the parties to the agreement rather than to the world at-large. In particular, it views the waiver portion of the clause as being integrated into the language governing release: "the Team, the City, and the District each hereby releases the other, and their respective agents, servants and employees, from and each hereby waives all claims for damages to person or property sustained by the Team, the City, or the District." Read as a whole and in context, the waiver portion relied on by Spirtas is not some independent and

3

global waiver of "all claims" against all parties, it is merely reflective of the purpose of the earlier clause releasing the other parties from liability. As the Fund notes, by its very nature a "release" is a release of *claims,* and thus it makes no sense to pluck the "waiver of claims" language out of its context within that sentence.

Based on the plain language of the clause, I conclude the Fund is correct that the waiver portion of the relevant sentence should not be read as applying to non-parties to the Lease. Textually, the entire sentence at issue contains a single integrated idea, namely, that the parties release *each other* and waive any claims against each other: "the Team, the City, and the District each hereby releases the other, and their respective agents, servants and employees, from and each hereby waives all claims [against the others and their agents] for damages to person or property sustained by the Team, the City, or the District." Notably, the waiver and release clauses are linked together by an "and," meaning that "all claims" is the object of *both* the release and the waiver. As such, it would not make sense to ignore the "against the others" clause with respect to the waiver but apply it to the release. The "against the others" limitation applies to both.

Moreover, Spirtas has not provided any compelling reason to read the waiver as broadly as it does. Spirtas cites a district court case that discusses the virtues of subrogation waivers, suggesting that such arrangements ensure that risk is allocated to insurers (who by nature are better able to judge and manage risk); they also minimize disputes because the parties to the waiver arrangements need look only to the insurer for relief. *See Great Northern Ins. Co. v. Architectural Environments, Inc.,* 514 F. Supp.2d 139, 143 (D. Mass. 2007). Even if true, however, such concerns are only relevant in a situation in which the party relying on the waiver was also a party to the waiver agreement itself. Tellingly, in *Great Northern* the applicability of the waiver provisions was never in doubt, and the defendants there were in fact *parties* to the subrogation waivers at issue.

4

*Id.* ("[T]here is no dispute that Great Northern issued the insurance policy after the construction was completed and that TKT agreed to the waiver of subrogation claims. There is also no dispute that the waiver of subrogation provision applies to the instant, post-construction loss.") In fact the language cited in *Great Northern* emphasizes that such arrangements make sense only between the parties to the agreements themselves – they are not intended to relieve the world at large of liability. *Id.* (noting that such waivers "reflect an intention *on the part of the parties* to relieve each other [of] liability and look to only one insurer to bear the risk of fire instead.") (quoting *Acadia Ins. Co. v. Buck Constr. Co.,* 756 A.2d 515, 520 (Me. 2000)). In short, Spirtas has not advanced any strong policy-based reason to interpret the City's waiver as one that extends to all claims, even against non-parties.

Spirtas also suggests it could be viewed as a third-party beneficiary of the Lease's waiver clause because the contracts demonstrate the parties' intent to place the risk of loss on insurance. It cites a case from Illinois, *Home Ins. Co. v. Bauman,* in which an insurer was precluded from recovering from the subcontractor who caused damage to the insured's home. 684 N.E.2d 828 (Ill. App. Ct. 1997). The court in *Bauman* noted that the construction contract provided that the owner and contractor waived all rights against each other; the contract further provided that the "Contractor shall require similar waivers in favor of the Owner and the Contractor by Subcontractors. . ." *Id.* at 830. In other words, the contract imposed a kind of mutual waiver between and among all of the contractors, subcontractors, and the owner. As such, the court did not place any weight on the fact that the subcontractor was not itself a party to the construction contract:

> Home [Insurance Co.] argues that Arito [the subcontractor who caused the damage] cannot rely on the Contract because Arito was not a party to the Contract. However, Home's insureds, the Slovins, were parties to the Contract. Section 17.3 of the Contract obligated the Slovins to purchase and maintain insurance on the Work that included the interest of the subcontractor. The Contract as a whole demonstrates the

5

> intent of the parties to place the risk of loss regarding the Work on insurance. *The plain language of section 17.3 also clearly demonstrates that the contracting parties intended to confer this benefit directly upon nonparty subcontractors. . . .* Indeed, given the Contract and facts and circumstances of this case, Arito may well be considered a third-party beneficiary of the Contract.

*Id* at 831 (italics added).

*Bauman* actually underscores the Fund's position that the waiver clause cannot be read as applying to all parties. Here, unlike in *Bauman*, there is no language in any of the agreements suggesting that the parties intended to benefit third parties. In fact, here the Lease requires that each of the parties have all of its insurance policies endorsed with clauses releasing and waiving all claims against "the other party" (meaning the three signatories to the Lease), as opposed to "all other parties" or something more broad. (Wied Aff., Ex. A at 63.) There is thus no provision for obtaining waivers from third parties or subcontractors, and as such the considerations set forth in *Bauman* do not apply here. The concept of third-party beneficiaries is sometimes thrown around casually, but it is clear that the circumstances under which a non-party may enforce the agreement entered into by others are quite rare. *Mercado v. Mitchell,* 83 Wis.2d 17, 28, 264 N.W.2d 532, 538 (Wis. 1978) ("The general rule on third-party beneficiaries in Wisconsin is that one claiming such status must show that the contract was entered into by the parties directly and primarily for his benefit. The benefit must be more than merely incidental to the agreement.") In short, there is no evidence any of the signatories to the Lease intended to make Spirtas a third-party beneficiary of their agreement. *Cf. Shaw Constructors v. ICF Kaiser Engineers, Inc.,* 395 F.3d 533, 539 (5th Cir. 2004) (contract between contractor and subcontractor clearly evinced intent to make owner a third-party beneficiary of lien waiver provision).

6

Additionally, Spirtas makes a very brief suggestion that agreements apart from the Lease evidence the City's waiver of all claims.[3] It argues that the Construction Services Agreement, Construction Administration Agreement and the Project Manual show that the City intended to waive all claims against subcontractors. Notably, however, Spirtas does not cite any specific language that would suggest the City was waiving any claims; its argument on this score is thus fatally undeveloped. In fact, the Fund notes that both the CAA and the contract between Turner Construction and Spirtas contain *indemnification* provisions that specifically account for the possibility that a subcontractor like Spirtas would become liable to the City. Such provisions would not make sense if the Lease had somehow operated to fully waive any claims the City would have against anyone.

Finally, Spirtas briefly maintains that the Policy Release Agreement, which the parties entered into to settle the claims arising out of the damage Spirtas caused, has its own waiver provision in it. Spirtas' argument, however, is based on a snippet of language it has taken out of context. The portion of the clause Spirtas quotes states that "subrogation is permitted against any entity, liable for the damages caused by the Loss or Losses, that is not an insured or additional insured to the Builder's Risk policy." Because Spirtas *was* an additional insured under that policy, it argues that there can be no subrogation.

There are at least two problems with this argument. First, the fact that the agreement *permits* subrogation against non-parties does not necessarily mean it forbids subrogation against parties. More importantly, Spirtas' brief has failed to quote the entirety of the clause, and thus it has dramatically altered the text's clear meaning. The entire clause reads as follows:

---

[3]The Fund persuasively argues that the rest of Spirtas' arguments are simply conclusory and should be deemed waived. I address them here briefly for the sake of completeness.

> the Builder's Risk Insurers are, by the terms of the Builder's Risk Policy, prohibited from prosecuting subrogation rights against any entity that is an insured or additional insured to the Builder's Risk Policy, however subrogation is permitted against any entity, liable for the damages caused by the Loss or Losses, that is not an insured or additional insured to the Builder's Risk Policy.

(Kostecke Aff., Ex. D at 8).

The Policy Release Agreement defines "Builder's Risk Insurers" as Westchester Fire Insurance Company and RLI Insurance Company (and their agents, etc.). (Kostecke Aff., Ex. D at 2.) Thus, the paragraph cited by Spirtas only bars Westchester or RLI from seeking subrogation against an insured under the Builder's Risk Policy – it says nothing whatsoever about the City of Green Bay or the Local Government Property Insurance Fund, and it cannot sensibly be read to operate as a waiver of their rights. The fact that the Policy Release Agreement does not waive any pertinent rights is underscored by the agreement itself:

> It is understood by the signatories hereto, that this Agreement does not in any manner waive any of the rights or defenses of the Local Government Fund. This Agreement is to allow for future resolution of the rights between the Builder's Risk Insurers [Westchester and RLI] and the Local Government Fund . . .

(Kostecke Aff., Ex. D at 5.)

In sum, there is nothing within any of the numerous agreements cited above that suggests the City or the Fund are barred from seeking subrogation. Accordingly, the Defendant's motion for summary judgment is **DENIED**. The clerk is directed to set the matter for further scheduling.

Dated this   25th   day of July, 2008.

                                                    s/ William C. Griesbach
                                                    William C. Griesbach
                                                    United States District Judge