UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THE LOCAL GOVERNMENT
PROPERTY INSURANCE FUND,

    Plaintiff,

v.                                                            Case No. 07-C-291

SPIRTAS WRECKING CO.,

    Defendant.

## DECISION AND ORDER

In this action the Plaintiff (the "Fund") alleges that Defendant Spirtas Wrecking Company caused damage to Lambeau Field during a renovation project. As a result, the Fund paid $200,000 on behalf of its insured, the City of Green Bay, and the Fund now seeks to collect from Spirtas pursuant to what it alleges are its subrogation rights. The Fund also seeks its attorney's fees and other expenses under a clause in a contract Spirtas had with the general contractor on the construction project. Both sides have moved for summary judgment and, for the reasons set forth below, I conclude both motions should be denied.

Spirtas does not contest that it caused the damage in question but instead asserts that it is not liable to the Fund because the Fund itself was never liable to its insured. Under this "voluntary payment" theory, Spirtas argues that the Fund's payment of $200,000 was simply an act resulting from largesse or a legal error.[1] Because the Fund's payment was "voluntary" (rather than

---

[1] The details of the payout are not material, but in short the Fund paid $200,000 to another insurer, Westchester, as a result of a settlement of claims involving several parties and insurers.

contractually required), the argument goes, the Fund should not be allowed to seek payment from Spirtas.

Some context is required, and the following brief recitation of facts is not contested. The City of Green Bay, the owner of Lambeau Field, hired the Turner Construction Company to head the Lambeau Field reconstruction project, a nearly $300-million-dollar undertaking. Turner subcontracted with Spirtas to perform demolition work. Under that contract, Spirtas agreed to indemnify the City of Green Bay for any damages it caused while working on the project, and ultimately Spirtas did accidentally cause damage to parts of the stadium.

The City was an insured under more than one insurance policy. Under a builder's risk policy issued by Westchester Insurance, both Spirtas and the City were named insureds. In addition, the City was insured under a policy issued by the Fund. After the loss was reported, several parties entered into a policy release agreement under which Westchester paid $400,000 for the loss and the City of Green Bay assigned to Westchester its rights to collect from the Fund. Westchester and the Fund then resolved the coverage issues (disputes arising out of the fact that both companies insured the City) when the Fund agreed to pay Westchester $200,000. It is that $200,000 that the Fund now seeks from Spirtas.

Spirtas' voluntariness argument is not a complex one.[2] The Fund's policy contains an "other insurance" provision that reads as follows:

---

[2] The Fund argues somewhat persuasively that I should not even consider Spirtas' argument on the merits because it should have raised this issue long ago. The Fund also suggests that a policy release agreement demonstrates that Spirtas conceded that the Fund is able to collect from Spirtas. Having reviewed the briefs, however, I conclude it is more appropriate to consider the merits of Spirtas' defense and dispose of the action on that basis.

2

> If there is other insurance covering loss to the property from any peril(s) insured against under this policy, the Fund will not be liable under this policy until such other insurance has been exhausted. The Fund shall not, in any circumstance, be liable for payment of deductibles under other policies.

(DPFOF ¶ 11.) Spirtas argues that there was "other insurance" in existence at the time of the damage, namely, the insurance policy with Westchester. It further argues that under a joint loss agreement, the Westchester policy would have clearly provided primary coverage for the loss Spirtas caused. Thus, in Spirtas' view, the Fund could have invoked the other insurance clause to deny coverage, and the cost of its failure to do so should not be borne by Spirtas.

The principle of subrogation allows a party who pays a debt on behalf of another to collect from the party that owes the debt in the first place. Thus, typically an insurer will compensate the insured out of its own funds and then seek payment from the party responsible for the loss. A logical corollary to the right of subrogation is that the insurer seeking to collect under a right of subrogation must have had some sort of obligation to pay in the first place. As other courts have put it, the right to subrogation only arises "when a person *other than a mere volunteer* pays a debt which in equity and good conscience should be satisfied by another." *Millers Nat'l Ins. Co. v. City of Milwaukee,* 184 Wis.2d 155, 168-69, 516 N.W.2d 376 (1994) (citation omitted) (italics added).[3]

The question, then, is whether the Fund was a "mere volunteer" when it paid $200,000 on behalf of the City of Green Bay. I conclude that it was not. I first note that the voluntary payment defense is a narrow exception to the principles of subrogation. *See Hult v. Ebinger,* 352 P.2d 583, 592 (Or. 1960) (noting that the origins of the voluntary payment rule are doubtful). Presumably,

---

[3]This is not to be confused with the so-called "voluntary payment doctrine," which means that one must object to the payment of a contested bill before or while paying it, or else he may not later raise the dispute in court. *Butcher v. Ameritech Corp.,* 2007 WI App 5, 298 Wis.2d 468, 478, 727 N.W.2d 546, 552 (Wis. Ct. App. 2006).

3

this is because almost every individual or entity that satisfies another's debt or pays for another's loss is doing so out of some kind of obligation rather than a sense of altruism. Thus, the definition of a "volunteer" is necessarily limited to those rare cases where payment is truly voluntary, or what some courts call "intermeddling." For example, if a generous citizen contributes money to a neighbor whose house is burned down by an arsonist, he will not have any subrogation rights against the tortfeasor because he made his donation as a volunteer. "Generally, the party making payment is a volunteer if, in so doing, he has no right or interest of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation." *Blackford v. Dickey,* 302 Ark. 261, 266, 789 S.W.2d 445, 447 (Ark. 1990).

> A mere volunteer or intermeddler who, having no interest to protect, without any legal or moral obligation to pay . . . pays the debt of another is not entitled to subrogation, the payment in his case absolutely extinguishing the debt. The payor must have acted on compulsion, and it is only in cases where the person paying the debt of another will be liable in the event of a default or is compelled to pay in order to protect his own interests, or by virtue of legal process, that equity substitutes him in the place of the creditor without any agreement to that effect; in other cases the debt is absolutely extinguished.

*Home Owners' Loan Corp. v. Crouse,* 30 A.2d 330, 331 (Pa. 1943) (citation omitted).

In Wisconsin one is not deemed a "mere volunteer" even if he pays pursuant to a legal obligation that is not crystal clear.

> That payment is made without compulsion does not necessarily make the payor a "mere volunteer." *Jindra v. Diederich Flooring,* 181 Wis.2d 579, 607, 511 N.W.2d 855, 864 (1994) ("Absolute and clear legal liability of the payor has not been a fixed prerequisite to obtaining subrogation rights."). Thus, potential, but not yet actualized, liability will suffice. *Id.,* 181 Wis.2d at 607-608, 511 N.W.2d at 864. For example, *Rowley Plastering Co. v. Marvin Gardens Dev. Corp.*, 180 Ariz. 212, 883 P.2d 449, 451 (Ariz. Ct. App.1994), held that a party "who settles under threat of civil proceedings or to protect its own interests is not a mere volunteer."

4

*Land Title Services, Inc. v. Kemnitz,* 2002 WI App 292, 2002 WL 31247092, 2 (Wis. Ct. App. 2002).

Here, it is clear that there was nothing "voluntary" about the Fund's payment to Westchester. From the outset, Westchester denied that its policy provided coverage for the damage. In a notice of claim letter to the Fund, Westchester stated that, due to an exclusion, its policy did not insure against loss covered by the Fund's policy. Specifically, the Westchester policy contained a provision excluding from coverage any "loss or damage to the covered property that is covered by Policy No. 140827 issued by State of Wisconsin Local Government Property Insurance Fund." (Dkt. # 45, Ex. D at 12). Westchester's attorney argued that "the above exclusion bars coverage under the Builder's Risk Policy when the damage is insured by the Local Government Property Insurance Fund." (Dkt. # 45, Ex. E, Letter from C. Michael Johnson at 1.) Westchester's attorney further argued that both insurers had an obligation to investigate the damage and to pay the City for half of the total until the coverage issues could be sorted out through arbitration or otherwise. (*Id.*) The next month, in settlement of that dispute, the Fund signed a mutual release, pursuant to which the Fund paid Westchester $200,000, the amount the Fund now seeks from Spirtas.

What is clear is that the applicability of the "other insurance" clause was disputed by the two potentially liable insurers. Westchester had a nonfrivolous argument that its insurance did not cover the loss, and the Fund chose to settle the coverage dispute. In settling the dispute, the Fund was not making a "voluntary" payment at all because it was protecting its own interests in the face of a coverage battle. The underlying merits of the coverage dispute are not relevant, so long as there is some arguable basis for the payment: "potential, but not yet actualized, liability will suffice." *Land Title Services,* 2002 WI App 292, 2002 WL 31247092, *2. As the Wisconsin Court of Appeals

5

noted, a party "who settles under threat of civil proceedings or to protect its own interests is not a mere volunteer." *Id.*

The fact that a merely arguable basis for payment will suffice is not surprising. Under Spirtas' theory, every loss-causing party sued by an insurer after a compensated loss would be entitled to assert all of the potential defenses the insurer would have had *against its insured*. Of course that would be a remarkable result. It would not only give rise to countless lawsuits, it would give insurers no incentive whatsoever to settle their claims promptly with their insureds or with other insurers. As another district court has noted, "[p]ublic policy also weighs against permitting a 'voluntary payment' defense in conventional subrogation cases. Insurers would always fight prompt payment of claims if their rights to subrogation were threatened unless they asserted every potential defense against insureds before paying." *Continental Cas. Co. v. Fifth/Third Bank,* 418 F. Supp. 2d 964, 971 (N.D. Ohio 2006) (noting that the voluntary payment rule does not apply to "conventional subrogation," which is subrogation that arises by contract or agreement). Thus, "[e]ven if the decision to pay a claim is legally or economically questionable, the 'desire to preserve customer relations and avoid a complex and costly coverage litigation is still sufficient to prevent the [insurer] from being considered a mere volunteer.'" *Id.* (quoting *Jorge v. Travelers Indem. Co.,* 947 F. Supp. 2d 150, 155 n. 7 (D.N.J. 1996)).[4]

In sum, it seems clear enough that to the extent the voluntary payment defense would apply in the subrogation context, it would only apply in cases of manifest error or true "intermeddling"

---

[4]Spirtas cites a sole case, from Ohio, suggesting that an insurer who pays a claim could be deemed a volunteer. *Farm Bureau Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co.,* 67 N.E.2d 906 (Ohio 1946). But that case involved apportionment of the amount covered between insurers – the defendant argued that the plaintiff paid *more* than its limits required, not that the plaintiff insurer did not cover the loss at all. That is a different scenario and does not support Spirtas' effort to assert the "other insurance" clause in this case.

6

– not when the payment arises out of an insurer's bona fide business decision to settle a dispute. Accordingly, I conclude Spirtas' motion for summary judgment should be denied.

Although I have concluded that Spirtas' principal defense does not carry the day, I am not satisfied that the Fund has established its right to judgment as a matter of law. Throughout this litigation the Fund (and the Court) have assumed that the Fund is properly subrogated to the rights of the City. However, the somewhat unusual nature of the post-loss negotiations among the parties has obfuscated what would otherwise be a commonplace legal issue. Had the City incurred a loss and been paid directly by the Fund, no one would question that the Fund is standing in the shoes of the City in this action. But here, the Fund paid Westchester, and it appears that Westchester Insurance signed over any subrogation rights it had to the Fund. It is not clear – at least from the record – whether the Fund is now standing in the shoes of the City or of Westchester. If the latter, it is unclear how the Fund could pursue Westchester's right of recovery against its own insured (Spirtas was a named insured under the Westchester policy). It is certainly possible that the Fund does have proper subrogation rights, but I am not satisfied at this time that the matter has been fully explored and thus I cannot conclude from the record that the Fund is entitled to summary judgment. The clerk will be directed to set the matter on for oral argument on this issue.

For the reasons given above, the motions for summary judgment are **DENIED**. The clerk will schedule the matter for oral argument on the issue set forth immediately above.

**SO ORDERED** this ___31st___ day of July, 2009.

                                                    s/ William C. Griesbach
                                                    William C. Griesbach
                                                    United States District Judge